54 F.3d 773
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Richard B. FREY, Plaintiff-Appellant,
v.
Walter JOHNSON; Greg L. Moore, Defendants-Appellees,
and
Leroy HYLER; City of Eden, North Carolina, Defendants.
 No. 94-6535.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1995.
Decided May 22, 1995.
 
 ARGUED: Teresa Lynn Hier, White & Crumpler, Winston-Salem, NC, for appellant. Allan R. Gitter, Womble, Carlyle, Sandridge & Rice, P.L.L.C., Winston-Salem, NC, for appellees. ON BRIEF: David Bruce Freeman, White & Crumpler, Winston-Salem, NC, for appellant.
 Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Richard Frey appeals a jury verdict rejecting his pro se claim under 42 U.S.C. Sec. 1983 that two police officers used excessive force during his arrest. He claims that the district court erred in refusing to admit evidence of damages and in failing to instruct the jury regarding illegal searches. Finding no error, we affirm.
 
 I.
 
 2
 Between early 1988 and early 1989, Frey wrote a series of bad checks under the name of "Frey Realty Company," a non-existent company, and used credit cards issued in the names of his father and deceased mother. Police officers in Eden, North Carolina, discovered these activities in April, 1989. On May 18, 1989, Detective Greg Moore obtained a search warrant for Frey's apartment and six warrants to arrest Frey for obtaining property with worthless checks. Moore and Officer Walter Johnson went to Frey's apartment and began to search it. Frey arrived home and entered the apartment while the officers were in the middle of their search. The officers showed him a copy of the search warrant and told him not to interfere in the search. Shortly thereafter, Johnson left the apartment to check Frey's mail. Frey followed him halfway out to the mailbox.
 
 
 3
 The parties provide different accounts of what happened next. Frey testified as follows: As he began to walk back up the stairs toward his apartment, Johnson lunged in front of him, and Frey's fingers touched Johnson's chest. Johnson then knocked Frey down, grabbed his arm, and tightly handcuffed him despite his cries of back pain. The officers then put Frey in the back seat of a police car, hit him in the face, and told him, "Don't say nothing to nobody." The officers took Frey to the police station. After a short wait at the station the officers returned Frey to the car. As Frey walked from the station to the car, Johnson applied a stun gun to Frey's ankles several times.
 
 
 4
 The officers then took Frey to the magistrate's office, where a paramedic examined him. Frey complained that he hurt all over and that his back and neck were in the greatest pain. The paramedic gave Frey ibuprofen, and then the officers took him home. Three days after the incident, Frey was still in pain. He returned to the hospital, where he saw a physician and a psychiatrist who treated him with medication for schizophrenia and for his neck and back pain.
 
 
 5
 The officers testified to a different series of events. They claim that after Johnson retrieved Frey's mail, Frey began to walk away from the apartment. The officers told him to return because they had arrest warrants to serve on him. When Frey did not return, Officer Johnson pursued him and took him by the arm to lead him back. Frey began to wave his arm and yell, "Police harassment." Johnson told him he was under arrest and reached for his handcuffs. Frey fell to the ground and started hollering, "Oh, my back." The officers handcuffed Frey and walked him to the car. After completing the search, the officers drove Frey to the police station and interviewed him. Frey did not complain of any injuries or pain. The officers then took him to the magistrate's office. When they arrived, Frey was lying over in the seat with his eyes closed. A paramedic examined Frey and said there was nothing wrong with him. Nevertheless, the officers took Frey to the hospital. Frey walked under his own power to the emergency room, where he was again examined. The officers then returned Frey to the magistrate's office. Frey answered the magistrate's questions, and the officers took him home.
 
 
 6
 Frey alleges that the officers' excessive use of force aggravated two preexisting injuries. First, Frey's back had been previously injured in an automobile accident in 1983. Second, beginning in 1974, Frey had received periodic treatment for schizophrenia. Frey claims that these conditions were dormant at the time of the incident and were reactivated following his arrest.
 
 
 7
 In 1992, Frey filed a pro se complaint under 42 U.S.C. Sec. 1983, alleging that the officers had violated his constitutional rights by using excessive force. At trial Frey sought to introduce as evidence of damages the medical bills that he had incurred for psychiatric treatment. The court denied permission to introduce the bills on the grounds that insufficient evidence existed to show that the alleged violation proximately caused the relapse of Frey's schizophrenia. The jury found that the officers, Johnson and Moore, had not violated Frey's constitutional rights. Frey now appeals.
 
 II.
 A.
 
 8
 Frey first argues that the district court erred by refusing to admit his medical bills for treatment of schizophrenia as evidence of damages. The court determined that to introduce the bills, Frey would have to show that his psychiatric condition was reactivated by the alleged use of excessive force, and thus that it was dormant at the time of the incident. The only evidence about the status of Frey's schizophrenia came from Frey himself, who testified that he was able to function normally until the time of his arrest. The court found this testimony untrustworthy because if Frey's schizophrenia had been active he may have been deluded into believing he was fine. Therefore, the court held, the evidence was insufficient to show that the proffered medical expenses were proximately caused by the alleged violation.
 
 
 9
 We need not decide whether the district court erred because the jury found against Frey on the issue of liability and never reached the issue of damages. Any error was therefore harmless. Ambrose v. Norfolk Dredging Co., 284 F.2d 802, 803 (4th Cir.1960).
 
 B.
 
 10
 Frey next contends that the district court erred "in failing to find that the plaintiff's constitutional rights were violated by the officers' illegal search and seizure." We take this to be a claim that the district court erred in failing to instruct the jury regarding illegal search and seizure.
 
 
 11
 Frey alleges that the search was illegal because (1) the magistrate had insufficient grounds to issue the search warrant and (2) Frey was illegally detained during the search. A search warrant is valid if, "given all the circumstances set forth in the affidavit before him," the magistrate properly finds that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We must uphold the warrant's validity if the magistrate had a "substantial basis" for finding probable cause. Id. at 236. Evidence before the magistrate showed that Frey had written at least six bad checks under the name of the non-existent "Frey Realty Company" and that he was using credit cards in the name of his father and deceased mother. This evidence was more than sufficient to support a finding of probable cause that Frey had committed crimes and that a search might yield credit cards, blank checks, bank statements, or other items connected with these crimes.
 
 
 12
 In arguing that he was illegally detained during the search, Frey relies on Michigan v. Summers, 452 U.S. 692 (1981), which he claims stands for the proposition that detention during a search is proper only when the search is for contraband. This reliance is misplaced. In Summers the Court assumed that the detention occurred without probable cause for arrest. 452 U.S. at 696. Here, the officers had established probable cause and had six warrants for Frey's arrest when they arrived at his apartment. When they detained Frey as he sought to leave the premises, they were acting within the authority of the warrants.
 
 III.
 
 13
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED